UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SAUL RODRIGUEZ, Plaintiff,

vs.

JO ANNE B. BARNHART, Commissioner of the Social Security Administration, Defendant.

Case No. CV 04-6386-RC

OPINION AND ORDER

Plaintiff Saul Rodriguez filed a complaint on August 4, 2004, seeking review of the Commissioner's decision denying his application for disability benefits. The Commissioner answered the complaint on December 22, 2004, and the parties filed a joint stipulation on February 14, 2005.

**BACKGROUND**

**I**

On March 26, 2002, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since February 23, 2001, due to neck and lower back pain. Certified Administrative Record ("A.R.")

55-57. The plaintiff's application was initially denied on July 8, 2002, and was again denied on September 19, 2002, following reconsideration. A.R. 38-47. The plaintiff then requested an administrative hearing, which was held by Administrative Law Judge Arthur Cahn ("the ALJ") on June 11, 2003. A.R. 48, 355-63. On July 25, 2003, the ALJ issued a decision finding plaintiff is not disabled. A.R. 14-30. The plaintiff appealed this decision to the Appeals Council, which denied review on June 3, 2004. A.R. 5-13.

**II**

The plaintiff, who was born on May 27, 1960, is currently 45 years old. A.R. 55. He has a sixth-grade education and has previously worked as a cabinet maker. A.R. 53, 68, 358-59.

The plaintiff apparently sustained a lower back injury at some point in the past; however, he continued to work. A.R. 252, 308-09, 359. Lumbar spine x-rays taken on June 6, 1997, showed degeneration at the lumbosacral junction with disc space thinning and a minimal osteophyte,[1] thoracolumbar Schmorl's nodes,[2] and an antalgic lean of the lumbar spine along with a hypolordosis, A.R. 121, while a lumbar spine MRI taken July 23, 1997, revealed degenerative disc disease of the lower lumbar spine with a central protrusion at L5-S1 that appears to infringe upon the right S1 nerve root and displace the left S1

---

[1] An osteophyte is "a bony excrescence or osseous outgrowth." Dorland's Illustrated Medical Dictionary, 1290 (29th ed. 2000).

[2] A Schmorl's node is "an irregular or hemispherical bone defect in the upper or lower margin of the body of the vertebra." Id. at 1224.

nerve root. A.R. 91.

On January 19, 2001, plaintiff was assaulted by a co-worker, who grabbed him by the neck and lifted him into the air. A.R. 130, 182, 208, 267, 331, 359. On March 21, 2001, Steven Brockel, D.C., a chiropractor, examined plaintiff and diagnosed him with cervicothoracic joint dysfunction and a history of stress and other stress-related symptoms, placed him on temporary total disability, started him on a course of physical therapy, and referred him for a psychological evaluation. A.R. 266-76. Dr. Brockel continued to treat plaintiff through October 10, 2002. A.R. 235-65, 277-94, 306-14. On April 18, 2002, Dr. Brockel diagnosed plaintiff with a moderate disc herniation at L5-S1 with joint dysfunction and bilateral sciatica, multiple discopathy of the cervical spine with nerve root irritation and concomitant moderate to moderate to severe headaches, chronic costovertebral displacement and joint dysfunction of the upper thoracic spine on the left, chronic left upper extremity neuritis related to the costovertebral displacement and cervical spine discopathy, shoulder pain and dysfunction affecting the guiding capabilities of the right scapula, and chronic stress, anxiety and depression, and concluded plaintiff is permanent and stationary.[3] A.R. 238-56.

---

[3] Dr. Brockel evaluated plaintiff for workers' compensation purposes. "A disability is considered 'permanent and stationary' for workers' compensation purposes 'after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time.'" Booth v. Barnhart, 181 F. Supp. 2d 1099, 1103-04 n.3 (C.D. Cal. 2002) (citations omitted).

On March 29, 2001, Julie Goalwin, Ph.D., a licensed psychologist, examined plaintiff, conducted psychological testing, diagnosed him with a major depressive disorder and a panic disorder without agoraphobia, determined plaintiff's Global Assessment of Functioning ("GAF") to be 60,[4] and concluded plaintiff is temporarily totally disabled and unable to work at his former job. A.R. 109-20. Dr. Goalwin reevaluated plaintiff on May 14, 2001, administered further psychological testing, diagnosed plaintiff as having an adjustment disorder with depressed mood, determined plaintiff's GAF to be 65,[5] and concluded plaintiff is permanent and stationary and unable to return to his former job. A.R. 95-108. Dr. Goalwin concluded plaintiff has: a moderate, intermittent impairment in his ability to comprehend and follow instructions and relate to other people beyond giving and receiving instructions; a moderate, constant impairment in his ability to influence people and make generalizations, evaluations or decisions without immediate supervision; and a severe, constant impairment in his ability to perform simple and repetitive, complex, or varied tasks, maintain a work pace appropriate to a given work

---

[4] A GAF of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[5] A GAF of 65 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

load, and accept and carry out responsibility for direction, control and planning.[6] A.R. 107-08. Dr. Goalwin further opined plaintiff's overall psychiatric disability is "[m]oderate to [s]evere[.]" A.R. 108.

Electromyographic ("EMG") studies of plaintiff's upper extremities performed May 18, 2001, were consistent with left C5 radiculopathy, while EMG studies of the lower extremities performed June 1, 2001, were borderline and might suggest lumbar radiculopathy. A.R. 135-36, 142-43. Nerve conduction velocity ("NCV") studies of plaintiff's upper extremities performed May 18, 2001, demonstrated findings consistent with compromise of the left side nerve root at C8 and the median and ulnar nerves bilaterally, while NCV studies of the lower extremities performed June 1, 2001, revealed compromise of the nerve root at S1 bilaterally. A.R. 122-29. A cervical spine MRI taken June 7, 2001, revealed a 3-mm. central disc protrusion at C4-C5

---

[6] Dr. Goalwin assessed plaintiff for workers' compensation purposes. The California workers' compensation system evaluates mental impairments using the psychiatric protocol, which lists eight psychiatric factors: (1) the ability to comprehend and follow instructions; (2) the ability to perform simple and repetitive tasks; (3) the ability to maintain a work pace appropriate to a given work load; (4) the ability to perform complex and varied tasks; (5) the ability to relate to other people beyond giving and receiving instructions; (6) the ability to influence people; (7) the ability to make generalizations, evaluations, or decisions without immediate supervision; and (8) the ability to accept and carry out responsibility for direction, control, and planning. Department of Industrial Relations, Division of Workers' Compensation, Schedule for Rating Permanent Disabilities, Table for Rating Psychiatric Disabilities, 2-3 (April 1997). A permanent disability rating for an injured worker with a psychiatric disability is obtained by rating each of the eight psychiatric factors from "minimal" to "severe." Id.

and 2-mm. central disc protrusions at C5-C6 and C6-C7, while a lumbosacral spine MRI taken the same day, showed a 5-mm. central disc protrusion at L5-S1 associated with a desiccated disc. A.R. 137-41.

On October 1, 2001, Gregory D. Carlson, M.D., an orthopedic surgeon, examined plaintiff, diagnosed him with cervical radiculopathy and lumbar degenerative disc disease and disc protrusion at L5-S1, A.R. 182-85, and opined plaintiff would be a potential candidate for surgical compression of the C4-5 region. A.R. 185. On March 6, 2002, Dr. Carlson reevaluated plaintiff and diagnosed him with lumbar degenerative disc disease at L5-S1 with radiculopathy and cervical degenerative disc disease with radiculopathy, A.R. 179-81, and opined plaintiff is a good candidate for an anterior discectomy and interbody fusion at L5-S1 in combination with a posterior instrumented fusion. A.R. 180.

On January 31, 2002, Mary Jo Ford, M.D., examined plaintiff and diagnosed him with cervical and lumbar strains and sprains, cervical and lumbar disc disease, lumbosacral radiculopathy, and cervicogenic headaches. A.R. 203-07. On February 5, 2002, plaintiff underwent a fluoroscopic examination of the lumbar spine, which was positive for concordant back pain with low volume injection at the L5-S1 disc level. A.R. 199-201. He also underwent a lumbar CT scan, which showed a right paracentral disc protrusion at L5-S1. A.R. 194, 196. When last examined on June 5, 2002, Dr. Ford opined plaintiff would be an appropriate candidate for percutaneous decompression discectomy/ nucleoplasty at L5-S1. A.R. 192-93.
//

On June 18, 2002, Barry Edelman, M.D., a psychiatrist, examined plaintiff and diagnosed him with post-traumatic stress disorder and a moderate major depressive episode, and determined plaintiff's GAF to be 60. A.R. 212-16. Dr. Edelman opined plaintiff can understand, remember, and follow simple instructions and maintain concentration and an adequate pace performing simple work, but would have difficulty understanding, remembering and following complex instructions and moderate difficulty interacting with peers and supervisors and marked difficulty interacting with the public on a consistent basis. A.R. 216.

On July 1, 2002, Paul Balson, M.D., a nontreating, nonexamining physician, opined plaintiff is slightly-to-moderately limited in his ability to understand, remember and carry out detailed instructions, but is otherwise not significantly limited. A.R. 225-28. Dr. Balson also found plaintiff has an adjustment disorder with depressed mood, no restriction in the activities of daily living, none-to-mild difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence, or pace, and there was "insufficient evidence" to determine whether plaintiff experienced any episodes of decompensation of extended duration. A.R. 229-31.

On July 29, 2002, David H. Payne, M.D., examined plaintiff and diagnosed him with discogenic back pain with negative nerve root involvement. A.R. 295-305. Dr. Payne concluded plaintiff would not benefit from decompression but instead requires an intradiscal electrothermal annuloplasty ("IDET") procedure and possibly a fusion. A.R. 300. A lumbar spine MRI was positive for disc herniation at L5-

S1 with a high intensity zone. A.R. 303. On December 30, 2002, Noel Lee Chun, M.D., examined plaintiff and diagnosed him with lumbar disc herniation at L5-S1, intractable discogenic low back pain, cervical disc bulges at C4-5, C5-6, and C6-7, and cervical radiculopathy and recommended the IDET procedure. A.R. 317-21.

On April 22, 2003, Julio V. Westerband, M.D.,[7] an orthopedic surgeon, conducted a qualified medical examination of plaintiff, diagnosed plaintiff as having, among other conditions, a cervical sprain and lumbosacral strain caused by the assault at work, a 3-mm. disc protrusion/extrusion at C4-5, a 2-mm. central disc bulge at C5-6, a 2-mm. disc bulge at C6-7, a 5-mm. central disc protrusion at L5-S1, and an adjustment disorder with depressed mood. A.R. 330-54. Dr. Westerband concluded plaintiff is permanent and stationary and should be limited to sedentary work,[8] involving no repetitive turning of the

---

[7] Dr. Westerband's opinions were submitted to the Appeals Council after the administrative hearing. A.R. 8. Since "the Appeals Council affirmed the decision of the ALJ denying benefits to [the plaintiff, the additional] evidence is part of the record on review to this court." Gomez v. Chater, 74 F.3d 967, 971 (9th Cir.), cert. denied, 519 U.S. 881 (1996); Bustamante v. Massanari, 262 F.3d 949, 952 (9th Cir. 2001); see also 20 C.F.R. § 404.970(b) (stating that "[i]f new and material evidence is submitted [to the Appeals Council, it] shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.").

[8] Dr. Westerband also evaluated plaintiff for workers' compensation purposes. Under the version of California's

head and neck, no repetitive use of the arms at or above shoulder level, and no repetitive pushing and pulling with the left arm.  A.R. 346-48.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Burch v. Barnhart, 400 F.3d 676, 678 (9th Cir. 2005) (citation omitted); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden of establishing a prima facie case of disability."  Roberts v.

---

workers' compensation terminology then in effect, sedentary work means the individual "can do work predominantly in a sitting position at a bench, desk or table with a minimum of demands for physical effort and with some degree of walking and standing being permitted."  Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-15 (Labor Code of California, April 1997).

Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1., 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (Step One). The ALJ then found plaintiff "has cervical and lumbar degenerative disc disease and adjustment disorder with depressed moods, impairments that are considered 'severe'" (Step Two); however, he does not have an

impairment or combination of impairments that meet or equal a listed impairment.  (Step Three).  The ALJ next determined plaintiff cannot perform his past relevant work as a cabinet maker and installer.  (Step Four).  Finally, the ALJ concluded plaintiff is not disabled because he can perform a significant number of jobs in the national economy.  (Step Five).

**IV**

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy.  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).  There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[9]  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  However, the Commissioner cannot rely on the Grids when the claimant suffers from nonexertional limitations; rather, she must rely on the testimony of a vocational expert.  Thomas v. Barnhart, 278 F.3d 947,

---

[9] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants.  Each rule defines a vocational profile and determines whether sufficient work exists in the national economy.  These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity."  Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

960 (9th Cir. 2002); Osenbrock, 240 F.3d at 1162.

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found plaintiff has the RFC to perform a limited range of light work; thus, plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an 8-hour day, sit for six hours in an 8-hour day, occasionally bend and stoop, and perform simple and unskilled work.[10] A.R. 28-29. Then, considering plaintiff's RFC, that he is a "younger individual[,]" A.R. 21, that he has "six years of education in Guatemala and limited ability to communicate in English[,]" id., and plaintiff's work experience, the ALJ applied Rule 202.18 of the Grids, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.18, as a "framework" and determined plaintiff is not disabled. A.R. 28-29. However, plaintiff contends the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not properly consider the medical opinions of his

---

[10] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking for up to two-thirds of the workday." Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.

examining physicians and improperly determined plaintiff is not a credible witness. The plaintiff is correct.

As an initial matter, since the ALJ found in Step Two that plaintiff has a severe mental impairment, the ALJ committed clear legal error in relying on the Grids to determine plaintiff is not disabled; rather, the ALJ needed to call a vocational expert to testify. Holohan v. Massanari, 246 F.3d 1195, 1209 (9th Cir. 2001); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); see also Vincent v. Heckler, 264 F.3d 767, 769-70 (8th Cir. 2001) (ALJ required to call vocational expert when claimant has severe mental impairment and is unable to perform past relevant work).

Further, since plaintiff has a condition that is "progressively deteriorating, the most recent medical report is the most probative." Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985); Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986). In this case, the most recent medical record is from Dr. Westerband, who examined plaintiff on April 22, 2003, and concluded plaintiff could perform a limited range of sedentary work[11] -- not light work -- involving no repetitive

---

[11] Under California workers' compensation law, sedentary work means that an individual "can do work predominantly in a sitting position at a bench, desk or table with a minimum of demands for physical effort and with some degree of walking and standing being permitted" Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines at 2-15. This definition is substantially similar to the definition of "sedentary work" under Social Security regulations, which provide "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of

turning of the head and neck, no repetitive use of the arms at or above shoulder level, and no repetitive pushing and pulling with the left arm. A.R. 348. Thus, the ALJ's RFC determination is clearly inconsistent with Dr. Westerband's opinions; however, the Commissioner did not provide any reason for rejecting Dr. Westerband's opinions. A.R. 5-6. Because "the opinion[s] of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record[,]" Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002), the Commissioner's failure to provide any reasons for rejecting Dr. Westerband's opinions is legal error. Smolen, 80 F.3d at 1286.

Moreover, in finding plaintiff's mental impairment allows him to do "simple and unskilled work[,]" the ALJ implicitly rejected the opinion of Dr. Goalwin, an examining psychologist, who opined plaintiff has a **severe** and constant impairment in his ability to perform even simple and repetitive tasks.[12] A.R. 107-08. Instead, the ALJ adopted the opinion of Dr. Balson, a nontreating and nonexamining physician, stating:

---

walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[12] The ALJ is not free to ignore medical reports using workers' compensation terminology; instead, the ALJ must be careful to properly consider the definitional differences between the California's workers' compensation and Social Security systems. Desrosiers v. Sec. of Health & Human Serv., 846 F.2d 573, 576 (9th Cir. 1988).

> With regard to the [plaintiff's] mental impairment, it is noted that the state agency psychiatric consultant[] reviewed both the [plaintiff's] psychological and psychiatric evaluations and, thus had a more complete longitudinal picture of his mental condition over time than did . . . Dr. Goalwin. . . . Therefore, greater probative weight is given to the assessments of the state agency psychiatric consultant[]. . . .

A.R. 25-26. This rationale, which gives more weight to a non-examining physician's opinion than an examining physician's opinion, is erroneous under well-established Social Security standards, and, thus, does not provide substantial evidence to support the ALJ's RFC determination. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); see also Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) ("The nonexamining physician's conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician."); Nelson v. Heckler, 712 F.2d 346, 348 (8th Cir. 1983) (per curiam) ("'[T]o attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best.'" (citation omitted)).

The ALJ's determination that plaintiff is not credible also is not supported by substantial evidence. At the administrative hearing, plaintiff testified he is unable to work due to constant neck and back pain, which increases when he sits, drives, walks, or lifts, and

causes him to lie down about 18 hours a day. A.R. 75, 359-62. In fact, plaintiff stated he can only stand and/or walk for 10-15 minutes and sit for 10-20 minutes at a time before he has to shift positions, A.R. 76-77, 242, and the medications he takes, which include Ultram,[13] cause him drowsiness and dizziness. A.R. 75.

However, the ALJ found plaintiff's statements were not credible because "his daily activities include watering the plants, watching television, and caring for his own personal needs" as well as shopping, walking to the store, performing yard work and being "active at least six hours of the day." A.R. 26. Nevertheless, "'the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.'" Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (citations omitted). In this case, when the plaintiff, who was testifying through an interpreter, stated he was "active around six hours [a day] only" he meant he spent approximately 18 hours each day lying in bed and his activities were merely walking around the house or to the store, going to physical therapy or medical appointments and "sometimes" watering the plants. A.R. 361. These activities do not constitute clear and convincing reasons for the ALJ's negative credibility determination. Benecke, 379 F.3d at 594; see also Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (Plaintiff's ability to go grocery shopping with assistance, walk

---

[13] "Ultram is prescribed to relieve moderate to moderately severe pain." The PDR Family Guide to Prescription Drugs, 707 (8th ed. 2000).

approximately an hour in the malls, get together with her friends, play cards, swim, watch television, read, take physical therapy, and exercise at home did not constitute a clear and convincing reason for rejecting her pain testimony).

The ALJ also found plaintiff is not credible because "review of the medical records has disclosed discrepancies in the history given by the [plaintiff] at various times with regard to his symptoms and medical treatment." A.R. 26. However, this determination is not a clear and convincing reason for discrediting plaintiff's testimony because the ALJ did not specifically identify the discrepancies in the medical records. Regennitter, 166 F.3d at 1297; see also Reddick, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." (internal quotation marks omitted)).

Thus, the ALJ failed to make clear and convincing findings to support the negative credibility determination, as he must. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). For all these reasons, the Commissioner's Step Five determination is not supported by substantial evidence.

**V**

This Court has the discretion to award disability benefits to a plaintiff when there is no need to remand the case for additional factual findings. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); Holohan, 246 F.3d at 1210. Generally, the Court will

direct the award of benefits in cases where the record has been fully developed and where further administrative proceedings would serve no useful purpose. McCartey, 298 F.3d at 1076-77; Vertigan, 260 F.3d at 1053.

Where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, that testimony is credited as a matter of law. Reddick, 157 F.3d at 729; see also Benton v. Barnhart, 331 F.3d 1030, 1041 (9th Cir. 2003) ("[G]iven claimant's obvious serious physical impairments, [her] claim of pain and physical limitations should have been credited."). Here, properly crediting plaintiff's statements regarding his physical limitations, it is clear plaintiff is disabled. See Gallant, 753 F.2d at 1454 ("'A man who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national economy.'" (quoting Delgado v. Heckler, 722 F.2d 570, 574 (9th Cir. 1984)). Therefore, the Court reverses the Commissioner's decision and remands this matter for an award of benefits.

**ORDER**

The plaintiff's request for relief IS GRANTED, and Judgment shall be entered in favor of plaintiff, and plaintiff is awarded disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423.

DATE:   August 16, 2005              /s/ Rosalyn M. Chapman
                                       ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

R&R-MDO\04-6386.MDO
8/16/05